# United States Court of Appeals for the Federal Circuit

---

**GILBERT P. HYATT,**
*Plaintiff-Cross-Appellant*

**v.**

**COKE MORGAN STEWART, ACTING UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND ACTING DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellant*

---

2018-2390, 2018-2391, 2018-2392, 2019-1049, 2024-1992, 2024-1993, 2024-1994, 2024-1995, 2019-1038, 2019-1039, 2019-1070

---

Appeals from the United States District Court for the District of Columbia in Nos. 1:05-cv-02310-RCL, 1:09-cv-01864-RCL, 1:09-cv-01869-RCL, 1:09-cv-01872-RCL, Senior Judge Royce C. Lamberth.

---

Decided:  August 29, 2025

---

ANDREW M. GROSSMAN, Baker & Hostetler LLP, Washington, DC, argued for plaintiff-cross-appellant.  Also represented by MARK W. DELAQUIL, JASON F. HOFFMAN.

KEVIN RICHARDS, Office of the Solicitor, United States

Patent and Trademark Office, Alexandria, VA, argued for defendant-appellant. Also represented by PETER J. AYERS, OMAR FAROOQ AMIN, ROBERT MCBRIDE, ROBERT J. MCMANUS, FARHEENA YASMEEN RASHEED, MICHAEL TYLER.

————————————

Before REYNA, WALLACH, and HUGHES, *Circuit Judges.*

REYNA, *Circuit Judge.*

This case is back before us following our earlier decision in *Hyatt v. Hirshfeld*, 998 F.3d 1347 (Fed. Cir. 2021). For the reasons discussed below, we affirm the district court's judgment for the United States Patent and Trademark Office on the affirmative defense of prosecution laches. As to Mr. Hyatt's cross-appeal, we conclude that the district court correctly determined that it lacked Article III jurisdiction over a set of pending claims.

## BACKGROUND

The facts and legal issues presented in this appeal are similar to those that we addressed in *Hyatt v. Hirshfeld*, 998 F.3d 1347 (Fed. Cir. 2021) ("*Hyatt I*"). So, we offer an abbreviated version of the background facts, including the district court's decision on remand.

### I. Initial Proceedings

Gilbert P. Hyatt is an inventor and registered patent agent. In the early 1970s, Mr. Hyatt began filing patent applications with the United States Patent and Trademark Office ("PTO"). In the months leading to the June 8, 1995 effective date for certain commitments and obligations undertaken at the Uruguay Round for the General Agreement on Tariffs and Trade ("GATT"), Mr. Hyatt filed nearly 400 applications ("GATT Bubble Applications").

This appeal concerns four of Mr. Hyatt's GATT Bubble Applications. *Hyatt I*, 998 F.3d at 1353. The patent examiner rejected most, if not all, of the claims for each

application. *Id.* at 1355. Mr. Hyatt appealed these rejections to the Board of Patent Appeals and Interferences ("Board"). *Id.* For each application, the Board affirmed the examiner's rejections of certain claims. *Id.* For some applications, the Board reversed the examiner's rejections of certain claims. *Id.*

In 2005 and 2009, Mr. Hyatt filed four actions in federal district court under 35 U.S.C. § 145 to secure allowance of all claims in his four GATT Bubble Applications.[1] *Id.* The PTO asserted affirmative defenses of prosecution laches and invalidity for anticipation and lack of written description for all claims. *Id.* at 1351, 1355–56.

In all four actions, the district court determined that the PTO's defenses of prosecution laches and invalidity failed, granting judgment in favor of Mr. Hyatt as to the pending claims for which the Board had affirmed the patent examiner's rejections. *Id.* at 1359. As to the pending claims for which the Board reversed the patent examiner's rejections, the district court determined that it lacked

---

[1]     An applicant may appeal an adverse decision by the Patent Trial and Appeal Board ("PTAB") directly to this court or may file a civil action in U.S. District Court for the Eastern District of Virginia. 35 U.S.C. § 145 (2025). For the remainder of this opinion, we cite to the 2002 version of 35 U.S.C. § 145, which was in force at the time Mr. Hyatt filed his § 145 actions. The two substantive differences between the current version and the 2002 version are that the latter referred to the Board of Patent Appeals and Interferences, the predecessor to the PTAB, and allowed suits in the U.S. District Court for the District of Columbia.

jurisdiction over those claims.  J.A. 77 n.12.[2]  The district court explained that "[t]he Constitution's case or controversy requirement bars the Court from issuing an Order on claims not in dispute before it."  *Id.* (citing U.S. CONST. ART. III, § 2, cl. 1).

The PTO appealed the four judgments, arguing that prosecution laches prevented issuance of the pending claims at issue, and in the alternative, the pending claims were invalid.  *Hyatt I*, 998 F.3d at 1359.  Mr. Hyatt cross-appealed three of the judgments, raising the single issue of whether the district court had Article III jurisdiction over the set of pending claims for which the Board reversed the patent examiner's rejections, i.e., the portion of the Board's decisions which were decided in Mr. Hyatt's favor.  *Id.*

## II. *Hyatt I*

We consolidated the PTO's appeals, Appeal Nos. 18-2390, 18-2391, 18-2392, and 19-1049, and Mr. Hyatt's cross-appeals, Appeal Nos. 19-1038, 19-1039, and 19-1070. Following briefing and argument, we vacated the district court's judgments in the four § 145 actions, concluding that the court had misapplied the standard for prosecution laches and that under the correct legal standard, the PTO satisfied its burden of proving that Mr. Hyatt engaged in unreasonable and unexplainable delay in prosecuting his applications at issue.  *Id.* at 1369.  We explained that, like the party asserting a prosecution laches defense in an infringement action, the party asserting a prosecution laches defense in a § 145 action must show the delay was prejudicial.  *Id.*

---

[2]    This is the joint appendix filed in Appeal Nos. 18-2390, 18-2391, 18-2392, and 19-1049, and Mr. Hyatt's cross-appeals, Appeal Nos. 19-1038, 19-1039, and 19-1070.

We therefore remanded the issue of prosecution laches to allow for Mr. Hyatt to present evidence on whether the delay was prejudicial. *Id.* at 1371. We, however, retained jurisdiction over the PTO's appeals with respect to the anticipation and written description issues, holding these issues in abeyance pending the district court's remand decision on prosecution laches. *Id.* at 1371–72. Mr. Hyatt's cross-appeals remain pending before this court.

### III. Proceedings on Remand

On remand, the district court held a nearly three-week bench trial on the issue of prosecution laches. SAppx4.[3] The district court then issued a 102-page remand decision, finding that "the complete trial record require[s] a singular result—judgment for the PTO. No other result is even colorable." SAppx102. The district court noted that it "takes no pleasure in this result," but that Mr. Hyatt "at last received a full and fair hearing on prosecution laches." *Id.*

The district court transmitted its decision to this court, prompting Mr. Hyatt to file notices of appeal in each underlying action. These four appeals, Appeal Nos. 24-1992, 24-1993, 24-1994, 24-1995, have now been consolidated with the actions we have held in abeyance, Appeal Nos. 18-2390, 18-2391, 18-2392, and 19-1049, and with Mr. Hyatt's cross-appeals, Appeal Nos. 19-1038, 19-1039, and 19-1070.

### IV. Most Recent Appeals 24-1992, 24-1993, 24-1994, 24-1995

In the most recent appeals, Mr. Hyatt raises two challenges. He first argues that the defense of prosecution laches is not available in a § 145 action. Appellant Br.

---

[3]    "SAppx" refers to the joint supplemental appendix filed in Mr. Hyatt's most recent appeals, Nos. 24-1992, 24-1993, 24-1994, and 24-1995.

14–29. He then argues in the alternative that the district court abused its discretion in determining that prosecution laches applied in the four § 145 actions. *Id.* at 29–33. For the reasons discussed more fully below, we disagree with Mr. Hyatt on both points and thus affirm the district court's judgments for the PTO based on a defense of prosecution laches. As a result, we do not address the PTO's pending appeals of anticipation and lack of written description support, which are now moot. *eSimplicity, Inc. v. United States*, 122 F.4th 1373, 1376 (Fed. Cir. 2024). We address Mr. Hyatt's cross-appeals, which remain at issue. We have jurisdiction under 28 U.S.C. § 1295(a)(4).

## STANDARD OF REVIEW

We review a district court's conclusions of law de novo and its factual findings for clear error. *Endo Pharms. Sols., Inc. v. Custopharm Inc.*, 894 F.3d 1374, 1379 (Fed. Cir. 2018). We review a district court's determination of prosecution laches for abuse of discretion. *Hyatt I*, 998 F.3d at 1359 (citing *Cancer Rsch. Tech. Ltd. v. Barr Lab'ys Inc.*, 625 F.3d 724, 728–29 (Fed. Cir. 2010)). "We may find an abuse of discretion on a showing that the court . . . exercised its discretion based upon an error of law or clearly erroneous factual findings." *Id.* (citation omitted).

## DISCUSSION

### I.

Mr. Hyatt first argues that the defense of prosecution laches is unavailable in a § 145 action. According to Mr. Hyatt, prosecution laches "is inconsistent with" the Patent Act of 1952 and recent Supreme Court precedent confirms this. *See* Appellant Br. 14–16, 18–19. Specifically, Mr. Hyatt argues that *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) and *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. 328 (2017)

foreclose the defense of prosecution laches in a § 145 action.[4]  Appellant Br. 15–16.  Mr. Hyatt also argues more narrowly, that even if prosecution laches survived the passage of the Patent Act for certain actions, such as an infringement action, it is not valid in the narrow circumstances presented here, a § 145 action involving transitional applications like Mr. Hyatt's four GATT Bubble Applications.  *Id.* at 13–14.

We already considered and rejected these same arguments in *Hyatt I,* and thus, they are foreclosed by the law-of-the-case doctrine.  "The law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 888 (Fed. Cir. 2015) (quotations omitted).  Issues decided "explicitly or by *necessary inference from the disposition*" constitute the law of the case.  *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.,* 761 F.2d 649, 657 (Fed. Cir. 1985) (emphasis added).

In *Hyatt I*, Mr. Hyatt argued that (1) the defense of prosecution laches did not survive the passage of the Patent Act; (2) even if it did survive the passage of the Patent Act, *Petrella* and *SCA Hygiene* now foreclose the defense of prosecution laches in a § 145 action; and (3) at a minimum, this defense did not extend to transitional applications in a § 145 action.  *See* Corrected Brief of Plaintiff–Cross-Appellant Gilbert P. Hyatt ("Prior Cross-Appellant Br."), *Hyatt v. Stewart*, No. 18-2390, ECF No. 47 at 49–54.   We

---

[4]    In *Petrella,* the Supreme Court held that Congress displaced the defense of litigation laches to copyright-infringement damages by specifying a statute of limitations in the Copyright Act.  572 U.S. at 677.  Three years later in *SCA Hygiene*, the Supreme Court held that litigation laches is not a defense to patent-infringement damages claims under the Patent Act.  *See* 580 U.S. at 331–32.

explicitly rejected Mr. Hyatt's first argument. *Hyatt I*, 998 F.3d at 1362 ("Before turning to the merits of prosecution laches, we address the threshold issue of whether the PTO can assert the defense of prosecution laches in a § 145 action. *We hold that it can.*" (emphasis added)). We then explained why that is and provided a detailed history of the prosecution laches defense in patent actions. *See id.* at 1359–63. As to Mr. Hyatt's second and third arguments, we necessarily considered them and did not find them convincing, as evidenced by our remand for further proceedings on prosecution laches. *See id.* at 1371–72.

Thus, given that we already considered and rejected Mr. Hyatt's arguments, we will not address them again. They are foreclosed by the law of the case. *See ArcelorMittal France*, 786 F.3d at 888.

## II.

Mr. Hyatt's second challenge is that the district court abused its discretion in ruling in the PTO's favor on prosecution laches. Appellant Br. 29–33. Specifically, Mr. Hyatt raises one narrow argument: that his prosecution conduct from 1992 until 2002 was justified by a 1992 decision from the Board on one of his applications ("1992 Board Decision") that reversed a rejection based on prosecution laches. *See id.* at 29–30. Mr. Hyatt argues that in light of the 1992 Board Decision, he had no reason to change the manner in which he prosecuted his applications until 2002, when this court announced in *Symbol Technologies, Inc. v. Lemelson Medical, Education & Research Foundation, L.P.*, 277 F.3d 1361 (Fed. Cir. 2002), that prosecution laches was an available defense in district court infringement actions. Appellant Br. 30–31.

Mr. Hyatt's argument is forfeited because he failed to make it before the district court. *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1286 (Fed. Cir. 2023); *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020). Before the district court, Mr. Hyatt did not present

the same argument he now makes on appeal. Across his more than 500 pages of post-trial briefing, Mr. Hyatt mentioned the 1992 Board Decision twice and only in the context of noting that it supported his serial prosecution practice in the 1990s. *See* SAppx235798–99 (¶ 72); SAppx236359. He never developed the argument that the 1992 Board Decision justified his prosecution delay until 2002, when this court issued *Symbol,* and which allegedly changed the reasonableness of his reliance on the 1992 Board Decision. So understandably, the district court did not consider this argument. We, too, will not consider this argument.

And in any event, the district court recognized Mr. Hyatt's narrow reliance on the 1992 Board Decision as support for his serial prosecution practice, SAppx20, but ultimately determined that Mr. Hyatt's prosecution delay was unreasonable. *See* SAppx102. The district court arrived at this conclusion following more than 1,000 pages of post-trial briefing, and a nearly three-week trial, during which the district court admitted hundreds of exhibits into evidence. *See id.* The district court then weighed the testimony and evidence, making 247 findings of fact, none of which Mr. Hyatt challenges on appeal. SAppx16–78. The district court also made various conclusions of law, ultimately concluding that the "complete trial record require[s] a singular result—judgment for the PTO. No other result is even colorable." SAppx102. Given the record, we see no abuse of discretion in the district court's judgment for the PTO.

## III.

We turn to Mr. Hyatt's cross-appeals. To start, no party disputes that the district court had Article III jurisdiction over the portion of the Board's decisions that affirmed the examiner's rejections. Rather, the parties dispute whether the district court had Article III jurisdiction over the portion of the Board's decisions that reversed

the examiner's rejections.[5]   The district court concluded that there was no "case or controversy" as to these pending claims.  J.A. 77 n.12.  For the following reasons, we agree with the district court that Article III jurisdiction is lacking as to the pending claims for which the Board reversed the examiner's rejections.

Article III of the Constitution imposes a threshold requirement "that those who seek to invoke the power of federal courts must allege an actual case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992).  As part of the case or controversy requirement, the party invoking a federal court's jurisdiction must demonstrate standing.  *Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016).  "A party has standing only if he shows that he has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the conduct being challenged, and that the injury will likely be 'redressed' by a favorable decision."  *Id.* (quoting *Lujan*, 504 U.S. at 560–61).

Relevant here, "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973).  The statute at issue provides a patent applicant with the legal remedy of a "civil action against the [PTO] Director," when the applicant is "*dissatisfied*" with a Board decision in an appeal from a patent examiner's rejection of pending claims. 35 U.S.C. § 145 (emphasis added).  The statute provides that:

---

[5]   In the four Board decisions giving rise to Mr. Hyatt's four § 145 actions, one affirmed all the examiner's rejections.  The other three reversed certain rejections and affirmed others.  It is with respect to these three decisions that Mr. Hyatt focuses his cross-appeals.

> [a]n applicant *dissatisfied with the decision of the [Board]* in an appeal under section 134(a) may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in [district court] . . . . The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the [Board], as the facts in the case may appear and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law.

35 U.S.C. § 145 (emphasis added).

Mr. Hyatt fails to establish Article III jurisdiction over pending claims for which the Board reversed the examiner's rejections. In his complaints, Mr. Hyatt made a bare allegation of dissatisfaction with the Board's decision. *See* Complaint, *Hyatt v. Stewart*, No. 09-cv-1864, (D.D.C. Sept. 25, 2009), ECF No. 5 at 3–4 ('398 App. Complaint) (discussing the Board's *affirmance* of the examiner's rejections and then stating, "[b]eing dissatisfied with the decision of the Board, Mr. Hyatt now seeks relief from this Court as statutorily permitted under 35 U.S.C. § 145"); Complaint, *Hyatt v. Stewart*, No. 09-cv-1869, (D.D.C. Sept. 25, 2009), ECF No. 5 at 3–4 ('062 App. Complaint) (similar); Complaint, *Hyatt v. Stewart*, No. 09-cv-1872, (D.D.C. Sept. 25, 2009), ECF No. 5 at 3–4, ('639 App. Complaint) (similar). We assume, without deciding, that Mr. Hyatt's bare allegation of dissatisfaction with the Board's decision is enough to establish Article III jurisdiction over the Board's reversal of the examiner's rejections at the pleading stage. However, this bare allegation is not enough to establish Article III jurisdiction for the remainder of litigation. *See Lujan*, 504 U.S. at 561; *Wittman*, 578 U.S. at 543 ("The need to satisfy these [Article III] requirements persists throughout the life of the lawsuit."). When jurisdiction is disputed during later phases of litigation, the party invoking federal jurisdiction

must show he suffered an injury by submitting "affidavit[s] or other evidence." *Wittman*, 578 U.S. at 545 (alteration in original) (citation omitted). The party simply cannot allege nonobvious harm, without more. *Id.*

Here, there is no "more." Mr. Hyatt made no argument below that he was dissatisfied with the Board's reversal of the examiner's rejections or presented evidence of harm stemming from the Board's reversal. *See* Corrected Response and Reply Brief for the Defendant-Appellant, Andrei Iancu, *Hyatt v. Stewart*, No. 18-2390, ECF No. 50 at 49–54, 65 ("Mr. Hyatt presented no argument to the district court as to why he was dissatisfied with the Board's reversal on those claims."); *see, e.g.*, Plaintiff Gilbert P. Hyatt's Proposed Findings of Fact and Conclusions of Law, *Hyatt v. Stewart*, No. 09-cv-1864 (D.D.C. March 6, 2018), ECF No. 220 at 1, 167 ¶ 497 (noting in conclusory fashion that "Mr. Hyatt is also entitled to a patent on claims . . . , the rejections for which were all reversed by the Board"). Nor can we discern, without more, how Mr. Hyatt was injured from the Board's reversal of the examiner's rejections. Thus, we need go no further. Based on this record, Mr. Hyatt does not have standing under Article III to bring a § 145 action as to the pending claims for which the Board reversed the examiner's rejections.

Mr. Hyatt, however, argues that there is Article III jurisdiction over all claims he put forth before the district court. Prior Cross-Appellant Br. 87–88. Mr. Hyatt argues that § 145 treats "the decision of the Board" as "an undivided whole, thereby encompassing all the claims subject to that decision—including those for which the Board reversed all rejections." *Id.* at 88. In other words, § 145 "extends district-court jurisdiction to the entire decision, without differentiation among claims addressed by the decision." Reply Brief of Plaintiff–Cross-Appellant Gilbert P. Hyatt, *Hyatt v. Stewart*, No. 18-2390, ECF No. 54 at 5.

We reject Mr. Hyatt's argument. Though Congress may provide a party with statutory standing, the party must nonetheless satisfy threshold Article III requirements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("Injury in fact is a constitutional requirement, and [i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." (alteration in original) (quotations omitted)). Thus, although § 145 provides an applicant with a statutory right to sue in district court when dissatisfied with a Board's decision, § 145 does not override Article III's threshold requirements. A patent applicant must still satisfy Article III's requirements as to each pending claim that the applicant seeks to submit to the district court in a § 145 suit. *See id.*

In sum, because Mr. Hyatt failed to establish that he was injured by the Board's reversal of the examiner's rejection of certain pending claims, the district court lacked Article III jurisdiction over these claims.[6]

---

[6]    Mr. Hyatt argues on appeal that he has standing to sue as to the pending claims for which the Board reversed the examiner's rejections. Prior Cross-Appellant Br. 88. According to Mr. Hyatt, his "injury is [the] PTO's failure to issue them" following the Board's reversal. *Id.* Mr. Hyatt's alleged injury does not establish Article III standing because it rests on the false notion that the PTO must issue a patent on claims for which the Board reversed an examiner's rejection. This is not so. When rejections are reversed, a patent may not necessarily issue at that time. Prosecution may continue until the PTO is satisfied that an "applicant is entitled to a patent under the law." 35 U.S.C. § 151(a); *see also BlackLight Power, Inc. v. Rogan*, 295 F.3d 1269, 1273–74 (Fed. Cir. 2002). Thus, the Board's

CONCLUSION

We have considered the parties' remaining arguments and do not find them persuasive. For the foregoing reasons, we affirm the district court's judgment for the PTO on the affirmative defense of prosecution laches. We also affirm the district court's determination that it lacked Article III jurisdiction over certain pending claims.

**AFFIRMED**

COSTS

No costs.

_____

reversal here did not necessarily require the PTO to issue Mr. Hyatt a patent on the pending claims at issue.